SARPHIE *v.* SARPHIE.

(Division A.   Dec. 6, 1937.)

[177 So. 358.   No. 32461.]

Green, Green & Jackson, of Jackson, Heidelberg & Roberts, of Hattiesburg, and Johnson & White, of Lexington, for appellant.

Ralph L. Landrum, of Kosciusko, and P. P. Lindholm, of Lexington, for appellee.

316

Argued orally by **Garner Green**, for appellant, and by **Ralph L. Landrum** and **P. P. Lindholm**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Appellant, T. G. Sarphie, instituted a proceeding for divorce against his wife, Mrs. Martha Elizabeth Sarphie, appellee. She filed her answer thereto, denying the allegations of the bill, and made her answer a cross-bill by which she sought a decree of the court awarding her an allowance for maintenance and solicitor's fee.

The court below dismissed the original bill, and awarded appellee a monthly allowance, and an amount for her solicitor's fee, from which this appeal is prosecuted.

The bill for divorce charged the wife with natural impotency and habitual cruel and inhuman treatment as set out in the first and seventh paragraphs of section 1414, Code of 1930, as amended by Laws 1932, chapter 275.

As to the ground of natural impotency, there was no evidence, in our opinion, tending to support the allegation thereof.

As to the ground of cruel and inhuman treatment, the record shows that these parties were married on October 7, 1934, and their separation occurred on February 2, 1935. The appellant's evidence, contended here to support this ground of cruel and inhuman treatment, was that from the inception of their married life the wife declined, by her conduct, to permit her husband to have successful coition with her, by so manipulating her body and limbs as to thwart a completion of the act, and that the successful refusals to him of his marital rights had produced a highly nervous state and indigestion, thereby injuring him and causing apprehension to him of danger to his mental and physical health. Appellant further testified that appellee was affectionate, alluring, and coaxed him to the point of coition, and then thwarted its accomplishment.

This, in brief, without going into the private and intimate relations between husband and wife in the secre-

cy of their bedchamber, extended over a period of nearly four months, except ten days of that time, in which, according to the evidence of the appellant, she visited her mother, on the advice of her physician, for the purpose of rest or recuperation that she might submit herself to the demands of her husband in this particular.

The attending physician testified that from the latter part of November, upon her request, he treated appellee and found her vagina very small, and that this treatment, as well as the act of coition, was painful to her. The treatment consisted of the insertion of an instrument for the purpose of dilating the sexual organs of a female. According to appellant's evidence, the last treatment was administered to her by the physician on January 24 or 25, 1935.

The evidence shows that, at some time during their cohabitation, there was a partially successful penetration of her vagina.

The evidence of appellee was to the effect that she loved her husband and desired to perform this marital duty, and submitted to the treatment by the physician that it might be accomplished, and did not thwart appellant's efforts; that she submitted herself at all reasonable times, and in every reasonable manner, to this demand of appellant, and her evidence tended to place the blame on appellant for their failure to accomplish completed coition. She denied that she was frigid or adverse to the act of coition, but desired the accomplishment of the act.

The chancellor, after hearing all the evidence, rendered a written opinion, from which we cannot doubt that he believed appellee's statement.

So far as the actual occurrences between the husband and wife, the evidence is necessarily confined to their versions as to what transpired. There were contradictions, such as is usual in most cases, in the case at bar, and in this state of the record, where there was sharp

conflict between them, we cannot say that the decree and finding of the chancellor is manifestly wrong.

We deem it unnecessary for us to announce our opinion as to whether or not a continuous, willful, intentional refusal, on the part of one spouse to permit the other to have sexual intercourse, would be recognized as habitually cruel and inhuman treatment. Neither do we think we are called upon to say, in the case at bar, that so short a period of time as four months' refusal to permit coition would be sufficient to establish cruel and inhuman treatment warranting divorce.

We will stop to say, however, that in the many cases we have read in connection with the point here involved, we have found no case where so short a time as four months has been held to be sufficient to establish the ground of habitually or extremely cruel treatment. We think on this ground, certainly to make out a case, the facts should present an inexcusable and long-continued refusal to permit coition, and that the case should be, at all events, a clearly extreme one.

We are relieved from reviewing much of the evidence and argument in this case on the question of separate maintenance and solicitor's fees, because, since the case was submitted, the parties have entered into a written agreement as to property or maintenance, in which they have sought to settle these matters.

As the case is pending here on appeal from the order allowing maintenance and attorney's fees, we will accede to the request of the parties that the clerk may make this written agreement a part of the final decree in this case.

In the light of the evidence, it is very probable that these parties will not, in the future, live together as husband and wife, but we are bound by the rules of law, and the decree of the chancellor is binding upon us, as has been oft times repeated in numerous decisions of this court. We cannot grant a divorce in this case, un-

less we can say, with confidence, that, on the conflicting evidence, the finding of the chancellor was manifestly wrong. Therefore, we leave the parties as we find them.
Affirmed.