618 So.2d 108 (1993)
William Craig GARDNER
v.
Rita Lynn Holloway GARDNER.
No. 91-CA-1087.
Supreme Court of Mississippi.
April 22, 1993.
*109 Travis Buckley, Ellisville, for appellant.
Alison R. Steiner, Adelman & Steiner, Hattiesburg, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
SMITH, Justice, for the Court:
This case is an appeal from the September 25, 1991, order by the Honorable Robert Taylor, Chancellor of the Tenth Chancery Court District, Forrest County, Mississippi, denying the parties' petitions for divorce. Under the order, the mother was given custody of the minor child and the father was ordered to pay child support and was given reasonable visitation. The parties were also enjoined from selling, trading, or encumbering the personal property of the parties.
In the appeal, Rita Gardner contends that the chancellor erred in not granting the parties a divorce on grounds of habitual cruel and inhuman treatment or irreconcilable differences. These assignments of error *110 are without merit and the Court affirms the chancellor. Craig Gardner alleges that the chancellor erred in enjoining the parties from selling, trading or encumbering the personal property of the parties. We agree and reverse and render on this point.

FACTS
Rita Holloway Gardner and William Craig Gardner, were married on May 19, 1984, while they were students at the University of Southern Mississippi. Their only child, Tegan Marie Gardner, was born on September 24, 1990.
The first three years of their marriage the Gardners lived in married student housing at Southern. Thereafter, they changed addresses several times in Mississippi and Alabama. In August, 1990, when they temporarily moved to New York so Rita could begin osteopathic medical school, but maintained their residency in Petal, Forrest County, Mississippi. In March, 1991, they moved their household goods back from New York and left them in storage, and on April 4 of that year Rita returned to school in New York alone.
On May 9, 1991, Rita Gardner filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment and sought the ownership, use and possession of certain property in storage and an injunction preventing Craig from removing any of the property from storage. She also sought custody of the minor child, child support, attorney fees, alimony and other relief. She also alleged irreconcilable differences as an alternative ground for divorce. Rita was given temporary custody of the child prior to the divorce hearing after alleging that Craig had threatened to take the child out of the jurisdiction of the court.
Craig Gardner filed an answer and cross-complaint wherein he denied the allegations of the complaint. He cross-complained for divorce on the grounds of habitual cruel and inhuman treatment and also sought custody, child support, attorney fees and related relief. He also alleged irreconcilable differences as grounds for divorce.
At trial, both parties accused the other of physical abuse. Craig admitted hitting Rita but contended that it was in self defense.
Rita testified that the first time she could recall Craig physically abusing her was in the summer of 1987 when they were living in Birmingham. There was a problem with plumbing in the bathroom and "when the landlord didn't corporate [sic] very quickly, [Craig] got angry; he struck me with his fist." She recounted several other incidents, two in 1989 while the parties were in Mississippi and Alabama and two others in New York. She estimated that he hit her "once every two to three months, averaged over the seven-year period." When questioned by the chancellor, Rita stated that there were no witnesses to any of the events in which she was hit.
Craig testified that he hit Rita only in self defense. After two and one-half years of Rita hitting him, he "finally frogged her on the arm ... to daze her and catch her attention to get her to stop." He also testified that he feared for his safety because Rita outweighed him.
At the time of the divorce trial, each party was living with his or her parents. Craig was working at an office supply and computer dealership earning a small salary and commission and Rita was unemployed. Craig has one bachelor's degree from Sanford University and another in political science from Southern. Rita has a B.A. in accounting from Southern and had finished one year of medical school at the time of trial.
Apparently, many of the couple's problems were money related. Craig changed jobs often. He testified to having worked for thirteen different employers. Many of the jobs were temporary or seasonal employment while he was in school. Craig testified that he was fired from one job because Rita accused a receptionist of making advances toward Craig. Another job Craig allegedly quit at Rita's request because she did not trust the women there. In two of the last three years of the marriage Rita earned more than Craig. Rita *111 was also the one who controlled the checkbooks. In May, 1989, the Gardners filed for bankruptcy. At the time of trial the Gardners still owed "a minimum of $140,000." A large part of the debt was student loans which could not be discharged in bankruptcy. The specific party at fault for the money problems was disputed. Each blamed the other with overspending.
During the marriage, Craig's parents provided substantial financial support. This support was in the form of gifts, use of credit cards, and loans both direct and as co-signers. Craig testified that Rita went behind his back and got money and co-signed loans he did not know about. Mr. Gardner estimated his support of his son and daughter-in-law as "somewhere in the neighborhood of $50,000, not just pennies."
Craig testified that he did not speak to his parents from December 25, 1988, until the end of May, 1990, because Rita encouraged him not to. Craig also prepared a will disinheriting his parents and leaving everything to Rita's parents at her urging. Craig stated he was trying to keep peace at home.

DISCUSSION

DID THE CHANCERY COURT ERR WHEN IT DENIED THE PARTIES A DISSOLUTION OF THEIR MARRIAGE ON THE GROUNDS OF IRRECONCILABLE DIFFERENCES?
In her initial pleading, Rita Gardner alleged irreconcilable differences as an alternative ground for divorce. In answer to the complaint, Craig Gardner admitted this allegation.
In his counterclaim for divorce, Craig also alleged irreconcilable differences as an alternative ground for divorce. In answer to the counterclaim, Rita admitted "that there are irreconcilable differences between the parties." At trial neither party raised the issue of irreconcilable differences but rather relied on his or her proof of habitual cruel and inhuman treatment.
At the close of Rita's proof, Craig's attorney moved to dismiss the complaint for failure to meet the burden of proof as to habitual cruel and inhuman treatment. The chancellor agreed that Rita had not met her burden of proof and sustained the motion. At the close of Craig's proof, Rita's motion to dismiss was confessed and the chancellor dismissed Craig's complaint as to the habitual cruel and inhuman treatment grounds.
Craig denies Rita's contention that the Chancellor erred in not granting her a divorce on the grounds of habitual cruel and inhuman treatment.
The recent case of Massingill v. Massingill, 594 So.2d 1173 (Miss. 1992) is cited by Rita in support of her argument. In Massingill, the lower court granted a divorce on the alternative grounds of irreconcilable differences. This Court reversed, finding that the Chancellor had exceeded his authority.
Rita contends that the present case can be distinguished based on the pleadings entered in the present case and because neither party denied the other party's request for an irreconcilable differences dissolution.
In Massingill, the Court noted:
Divorce in Mississippi is a creature of statute. Original jurisdiction to grant divorces in this State was vested in the legislature and the subsequent jurisdiction of the chancery court over divorce is derived from the assignment of that authority to the chancery court by the legislature.
594 So.2d at 1175.
Miss.Code Annotated § 93-5-2 states as follows:
(1) Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint complaint of the husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process.
(2) If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court *112 finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.
(3) If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto. The failure or refusal of either party to agree as to adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between the parties, or any portion of such issues, or the failure or refusal of any party to consent to permit the court to decide such issues, shall not be used as evidence, or in any manner, against such party. No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleading have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce. Appeals from any orders and judgments rendered pursuant to this subsection may be had as in other cases in chancery court only insofar as such orders and judgments relate to issues that the parties consented to have decided by the court.
* * *
(5) Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial; provided, however, that a divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party filing same by leave and order of the court.
(6) Irreconcilable differences may be asserted as a sole ground for divorce or as an alternate ground for divorce with any other cause for divorce set out in Section 93-5-1. (Emphasis added).
In Massingill, this Court reserved judgment on whether the pleadings signed by the parties, standing alone, could satisfy the statutory provisions requiring that mutual consent "must be in writing, signed by both parties personally." 594 So.2d at 1177. As in the present case, there were other areas which made this determination unnecessary.
The holding of Massingill applies to this present case; the difference is in the answers to the initial complaints. In Massingill, both parties denied that the other was entitled to a divorce on the grounds of irreconcilable differences. As this Court noted "the facts negate any conclusion there was mutual consent to a divorce on the grounds of irreconcilable differences." Id. at 1178. In the present case, Craig fully admitted Rita's contention that she was entitled to a divorce on grounds of irreconcilable differences, and Rita admitted that "there are irreconcilable differences between the parties," which falls short of an unequivocal admission that Craig was entitled to a divorce on this ground.
Even if the pleadings met the requirement of a "writing, signed by both parties, personally," the other statutory requirements of § 93-5-2(3) were not met. Specifically, there was no valid writing stating that the parties voluntarily consented to permit the court to decide the issues upon which the parties could not agree; there *113 was no writing specifically setting forth the issues upon which the parties were unable to agree; there was no statement that the parties understood that the decision of the court would be a binding and lawful judgment. These elements are required by statute. It must be emphasized that the language of the statute is framed in mandatory rather than permissive terms.
As noted by the Court in Massingill, "it is conceivable the required `mutual consent in writing' could have been accomplished by written stipulation, written agreement, or by some other viable means either prior to or during the last appearance before the chancellor." Id. In the present case, no effort was made to obtain such a stipulation, agreement or other means at the conclusion of the cases on the primary grounds of habitual cruel and inhuman treatment or at any other juncture prior to appeal.
After the August 22, 1991, divorce trial, Rita Holloway filed a Motion for Reconsideration and an Amended Motion for Reconsideration. Rita was concerned over who would get the 1985 Dodge Diplomat and the 1983 Dodge Diplomat. The judgment of the court was entered on September 25, 1991. On the same day, Craig filed a Motion to Correct Judgment in which he asked for additional visitation and also for reconsideration of which automobile should be awarded to each party. None of the motions mentioned or apparently even contemplated an irreconcilable differences divorce. The fact that Craig has disputed this assignment of error on appeal is further indication that no consent within the meaning of the statute existed.
The record of the proceedings, including all motions filed and hearings held, fails to clearly indicate that any of the participants were considering irreconcilable differences grounds as a viable basis for divorce. The record lacks the clarity and specificity that the statute requires, in addition to the specific writings required by the statute.
The statutory requirements for granting a divorce on the ground of irreconcilable differences were not met, and the chancellor did not err in not granting a divorce to the parties on this ground.

DID THE CHANCERY COURT ERR IN FAILING TO GRANT RITA A DIVORCE FROM CRAIG ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?
At the close of Rita's case, Craig's attorney moved the court to dismiss her complaint insofar as it sought a fault-based divorce. The chancellor said that "the Plaintiff has not met her burden in proving the grounds; chiefly by lack of sufficient corroboration." At the end of Craig's case, Rita's attorney moved to dismiss his complaint on the grounds of habitual cruel and inhuman treatment for failure to meet the burden of proof. Craig's attorney confessed the motion and the motion was sustained by the chancellor.
In the judgment entered in this case, the lower court found that "neither the Complaint or Counter Claim establishes grounds for divorce and divorce is hereby denied on behalf of the parties."
In the recent case of Rawson v. Buta, 609 So.2d 426 (Miss. 1992), this Court restated the basis for divorce on the grounds of habitual cruel and inhuman treatment:
A chancellor may grant a divorce on the grounds of "habitual, cruel and inhuman treatment." Miss. Code Ann. § 93-5-1 (1972). Mississippi rules require that "[i]n all uncontested divorce cases, except irreconcilable differences, the testimony of the Plaintiff must be substantially corroborated." Miss.Unif. Chan.Ct.R. 8.03 (1990). According to Mississippi case law, the plaintiff must prove this ground for divorce by a preponderance of the credible evidence. Cooper v. Cooper, 518 So.2d 664, 666 (Miss. 1988). The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony. Rainey v. Rainey, 205 So.2d 514, 515 (Miss. 1967).
Evidence sufficient to establish habitual, cruel and inhuman treatment should prove conduct that:

*114 either endanger[s] life, limb or health, or create[s] a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief or, in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance.
S. Hand, Mississippi Divorce, Alimony and Child Custody § 4-12 (2d ed. Supp. 1991) (citations).... Although cruel and inhuman treatment usually must be shown to have been "systematic and continuous," see Robinson v. Robinson, 554 So.2d 300, 303 (Miss. 1989), a single incident may provide grounds for divorce. Ellzey v. Ellzey, 253 So.2d 249, 250 (Miss. 1971) (citing Bunkley & Morse, Amis Divorce and Separation in Mississippi § 3:14(3) (1957). A causal connection between the treatment and separation must exist. Fournet v. Fournet, 481 So.2d 326, 328 (Miss. 1985).
The party alleging cruel and inhuman treatment must typically corroborate the testimony. Chambers v. Chambers, 213 Miss. 71, 56 So.2d 33 (1952). Only where "in its nature or owing to the isolation of the parties, no corroborating proof is reasonably possible," should a divorce be granted on the uncorroborated testimony of the plaintiff. Anderson v. Anderson, 190 Miss. 508, 200 So. 726, 727 (1941); Chambers v. Chambers, 213 Miss. 71, 56 So.2d 33 (1952).
609 So.2d at 431.
While habitual cruel and inhuman treatment may be established by a preponderance of the credible evidence, the charge "means something more than unkindness or rudeness or mere incompatibility or want of affection." Wires v. Wires, 297 So.2d 900, 902 (Miss. 1974).
In the present case, the Court found a lack of sufficient corroborating evidence. Rita relied on her own testimony as to acts of physical and mental abuse, and Craig claimed he hit her only in self defense and denied other of her allegations. Rita was unable to provide any witness who could corroborate her version of the case. The credibility of Rita's testimony as to other secondary matters was placed in serious doubt when multiple witnesses refuted her testimony. Her credibility as a witness was further damaged by her admission that Craig had not threatened to take their child out of the court's jurisdiction as she had alleged in support of her motion for temporary custody. There was also testimony that she gave false information on student loan applications. The chancellor was in the best position to judge the credibility of the witnesses.
The chancellor's finding of a lack of substantial corroboration of a sufficient factual basis for divorce on the ground of habitual cruel and inhuman treatment is supported by the record. This Court will defer to his determination under the previously cited cases.
This assignment of error is without merit.

DID THE CHANCELLOR ERR IN ENJOINING THE PARTIES FROM SELLING, TRADING OR ENCUMBERING THE PERSONAL PROPERTY OF THE PARTIES?
After their move from New York, the parties were unable to pay the moving bill and consequently their household furnishings and personal property were held in storage until the bill could be settled. At the time of trial, the bill was in excess of $4500 with the monthly storage fees accumulating. The parties had been unable to resolve their dispute over what should be done with the personal property, and Rita disclaimed any responsibility for the transportation and storage costs.
The judgment of the Chancery Court enjoined either party from disposing of or encumbering the property. The chancellor stated that this arrangement was for the protection of both parties.
Craig argues that the lower court erred in not allowing the parties access to the property and/or to stop the mounting cost of storage. Craig's contention that the lower court did not allow the parties access *115 to the property and/or to stop the mounting cost of storage is not supported by the record. The judgment of the court stated: "The Court enjoins the parties from selling, trading, or encumbering any of the personal property... ." No restriction was placed on access or on paying the cost of storage.
Craig further contends that the lower court could have divided the property under the cases of Dillon v. Dillon, 498 So.2d 328 (Miss., 1986) and Dudley v. Light, 586 So.2d 155 (Miss. 1991). In this contention, Craig is also mistaken.
In both cases cited, the Court was concerned with property division after divorce was granted. However, where no divorce is granted, the Chancery Court is without authority to order division of the marital assets. Thompson v. Thompson, 527 So.2d 617, 623 (Miss. 1988). Under the facts of this case, the court was also without compelling reason or justification in enjoining the parties from doing with their property as they so desire. For this reason, the portion of the order of the Chancery Court enjoining the parties from selling, trading or encumbering the personal property of the parties is reversed and rendered.

CONCLUSION
This Court finds that the lower court properly denied Rita Gardner's petition for divorce on both grounds of habitual cruel and inhuman treatment and irreconcilable differences. The cross appeal of Rita Gardner is dismissed and the decision of the lower court affirmed as to those issues. On the direct appeal of Craig Gardner, we agree that the lower court was in error and reverse and render on that portion of the judgment which enjoined the parties from selling, trading or encumbering their personal property.
DIRECT APPEAL: JUDGMENT REVERSED AND RENDERED. CROSS-APPEAL: JUDGMENT AFFIRMED.
HAWKINS, C.J., PRATHER, P.J. and SULLIVAN, PITTMAN, BANKS, McRAE and ROBERTS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.