¶ 1. John Larry Shorter appeals the judgment of the Copiah County Chancery Court ordering him to pay $500 per month as separate maintenance to his wife, Suzanne Ferguson Shorter. Mr. Shorter contends that his wife is not entitled to separate maintenance, and even if she is, the amount awarded is too large. He also alleges error in the denial of his counter-claim for divorce. Finally, Mr. Shorter claims that Mrs. Shorter's counsel, who had previously represented the parties in several matters, should have been disqualified. We disagree with each of these contentions and affirm.
 FACTS
¶ 2. The Shorters were married on August 30, 1972. They have two children, Molly and Owen. In December 1995, Mr. Shorter left home and moved in with a woman with whom he had been having an affair for several months. He returned home in January 1996, but left again in March of that same year. At the time of the lower court judgment, Mr. Shorter and his paramour resided in a mobile home which she purchased, situated on 22.5 acres of land that Mr. Shorter owns in Simpson County.
¶ 3. Mrs. Shorter filed a complaint for separate maintenance and other relief on March 31, 1996. A hearing on temporary relief was held July 3, 1996. Mr. Shorter *Page 354 
filed a motion for removal of Mrs. Shorter's counsel, Arnold Dyre, which was heard at the temporary hearing. Mr. Shorter argued that Mr. Dyre had previously represented the couple in two estate matters and in a lawsuit involving a former business partner, and had assisted the couple in preparing their wills. The motion was denied.
¶ 4. A temporary order was issued on July 30, 1996, requiring Mr. Shorter to pay $500 per month separate maintenance, $500 per month child support, and awarding Mrs. Shorter custody of the children. On August 20, Mr. Shorter filed his answer and counter-claimed for a divorce on the grounds of habitual cruel and inhuman treatment, natural impotence, and constructive desertion. He also sought an irreconcilable differences divorce but his wife did not agree.
¶ 5. A trial began on November 26, 1996, with the court hearing testimony regarding Mrs. Shorter's claim for separate maintenance and Mr. Shorter's counter-claim for divorce. The second phase of the trial, regarding custody and economic issues concluded on December 10, 1996. On December 17, the chancellor entered judgment awarding Mrs. Shorter $500 per month in separate maintenance and $500 per month in child support. In order to secure payment of the separate maintenance and child support, the chancellor further held that the $1,000 per month obligation constituted an equitable lien against Mr. Shorter's Simpson County property. Mrs. Shorter received custody of the children and an award of attorney's fees. She was also awarded $4,000 in child support and separate maintenance arrearage. The chancellor denied Mr. Shorter's claim for divorce.
 DISCUSSION I. Disqualification of counsel
¶ 6. Mr. Shorter argues that his wife's attorney, Arnold Dyre, should have been disqualified due to a conflict of interest.[1]
At the hearing on the motion to disqualify, testimony was elicited which revealed that Mr. Dyre represented the Shorters on several occasions. First, he represented the couple in two probate matters in which both parties were beneficiaries. Mr. Dyre also represented the Shorters in the preparation of their wills. According to the record, when Mr. Shorter was executor of an estate, Mr. Dyre served as his counsel. However, neither party addresses this representation on appeal. Finally, Mr. Dyre represented the Shorters in litigation against a former business partner claiming an interest in their video rental business. All representation had concluded by 1990. Mr. Shorter claims that during these prior representations, Mr. Dyre acquired knowledge of his finances that could be used to his detriment in the current litigation.
¶ 7. Mr. Shorter's complaint should first be analyzed under Rule 1.9 of the Mississippi Rules of Professional Conduct. It provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." M.R.P.C. 1.9.
¶ 8. "Most courts have employed a substantial relationship test to analyze the propriety of successive representation." Pearson v.Singing River Medical Center, 757 F. Supp. 768, 770 (S.D. Miss. 1991). The United States Court of Appeals for the Fifth Circuit has held that *Page 355 
 to disqualify his former counsel, the moving party must prove not only the existence of [a] prior attorney-client relationship but also that there is a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary. The party seeking disqualification is not required, however, to point to specific confidences revealed to his former attorney that are relevant to the pending case. Instead, he `need only to show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented him.'
Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.,559 F.2d 250, 252 (5th Cir. 1977).
¶ 9. Mr. Shorter has failed to establish that the present matter is substantially related to the previous matters in which Mr. Dyre represented him. Moreover, he has not proven that any financial information which Mr. Dyre may have acquired is confidential. Regardless, such information is the kind that should be disclosed by each side in the present case. If Mr. Shorter is arguing that Mr. Dyre's knowledge will require his financial disclosures to be more accurate than otherwise would be the case, we do not see that as a recognizable complaint. Regardless, there is no allegation that Mr. Dyre was given access while serving as counsel to any greater information than Mrs. Shorter has. The chancellor correctly denied the motion to disqualify.
 II. Separate maintenance
¶ 10. The supreme court has stated that the allowance of separate maintenance and the amount to be awarded are for the most part matters within the discretion of the chancellor. Further, these decisions will not be reversed unless they are against the overwhelming weight of the evidence. Honts v. Honts,690 So.2d 1151, 1153 (Miss. 1997).
¶ 11. Mr. Shorter claims that because his wife materially contributed to their separation, she is not entitled to separate maintenance. Further, he asserts that he never refused to support Mrs. Shorter. Alternatively, he argues that the award is too large and he is unable to pay it.
¶ 12. "It is well-established that `[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.'" Lynch v. Lynch, 616 So.2d 294, 296 (Miss. 1993). The power of the chancellor to grant a wife's request for separate maintenance is based on: (a) separation without fault on the part of the wife and (b) willful abandonment of the wife by the husband accompanied by a refusal to support her. Id. Moreover, the wife need not be totally blameless to allow an award of separate maintenance, but her (mis)conduct must not have materially contributed to the separation. Id.
 A. Material contribution to the parties' separation
¶ 13. In support of his claim that Mrs. Shorter's conduct materially contributed to their separation, Mr. Shorter argues that there has been an absence of sexual relations. He contends that he and his wife did not have sex for one and one-half years before he left home. Moreover, he argues that Mrs. Shorter had no interest in sex and informed him that she was no longer in love with him. Mr. Shorter claims that his wife allowed their son to sleep in the same bed with them in order to avoid engaging in sexual relations with Mr. Shorter.
¶ 14. Mrs. Shorter's testimony directly contradicted that of Mr. Shorter. She stated that she and Mr. Shorter had sex between the time Mr. Shorter returned home in December of 1995 and when he left for good in March of 1996. She denied telling Mr. Shorter that she was no longer in love with him and stated that her son rarely slept in her bed. *Page 356 
¶ 15. Mr. Shorter also relies on his wife's testimony to prove that she materially contributed to their separation. When asked "so you think that you share at least some of the blame in the fact that the two of you are separated right now," Mrs. Shorter responded "I'm sure that I must." The chancellor noted that "although Mrs. Shorter has testified that she was by no means perfect . . . . It is abundantly clear that there is no misconduct on her part that materially contributed to this separation . . . ." Simply because Mrs. Shorter acknowledged some fault in the breakup of her marriage, and even if that is true, that does not necessitate a finding that she materially contributed to the parties' separation.
¶ 16. The chancellor heard the testimony of both parties. He made his finding based on conflicting testimony. The weight of the evidence does not require a different conclusion. Weathersby v.Weathersby, 693 So.2d 1348, 1353 (Miss. 1997). We find no manifest error in the chancellor's conclusions regarding Mrs. Shorter's lack of substantial contribution to the parties' separation.
 B. Refusal to support
¶ 17. In order to be entitled to separate maintenance, Mrs. Shorter must not only establish that her conduct did not materially contribute to the separation of the parties but also that Mr. Shorter wilfully abandoned her and refused to support her. Mr. Shorter claims that he never refused to support Mrs. Shorter but rather that he is simply unable to do so. According to Mr. Shorter, he was forced to resign from his $45,000 per year job at Trustmark National Bank. He states that he has been unable to secure employment commensurate with his prior earnings and depends on his paramour for support.
¶ 18. Mr. Shorter testified that the only money which he had given Mrs. Shorter from the time he left in March 1996 until the temporary hearing held in July 1996, was $1,400. Before the separation, Mrs. Shorter stated that Mr. Shorter contributed at least $1,000 per month. She further testified that at the time of the parties' separation, they owned three vehicles. Mr. Shorter took all three vehicles with him when he left, depriving Mrs. Shorter and the couple's daughter of transportation. Mr. Shorter also cashed in $31,000 worth of stock which he used to improve the land on which the mobile home in which he now lives is located. Mrs. Shorter testified that she never saw any of this money. Shortly before his departure from the marital home, Mr. Shorter took out a second mortgage on the home, obtaining control of approximately $20,000. Again, Mrs. Shorter testified that she received no portion of this. Finally, a bank loan officer testified that Mrs. Shorter is several months behind on two mortgages covering properties owned by the parties, including the marital home. This is sufficient evidence of Mr. Shorter's refusal to support his wife.
¶ 19. Mr. Shorter attempts to demonstrate that Mrs. Shorter is not entitled to separate maintenance due to her rejection of his reconciliation attempt. He claims that he attempted to contact Mrs. Shorter following his departure from the marital home, but she refused to speak to him. Apparently, he feels that because Mrs. Shorter would not speak to him, she is not entitled to separate maintenance. "[I]f the husband should, in good faith, offer to cohabit and treat the wife with conjugal kindness, the wife's right to separate maintenance ceases and would, on a proper showing to the court, be discontinued." Day v. Day, 501 So.2d 353, 357 (Miss. 1987). Mr. Shorter admitted that the intent of his phone call was not to attempt a reconciliation and that he currently has no intention of returning to his wife. This argument is without merit.
 C. Amount of award
¶ 20. Mr. Shorter contends that if Mrs. Shorter is entitled to separate maintenance, the amount of the award was too much, given his unemployed status. He *Page 357 
again cites the fact that he was forced to resign from his job and has been unable to find employment. Additionally, he claims Mrs. Shorter's earning power is similar to his own, as she earns $33,000 per year, compared to the $45,000 he was earning at the time of his resignation.
¶ 21. Six criteria must be considered in setting awards of separate maintenance: 1) the health of the husband and the wife; 2) their combined earning capacity; 3) the reasonable needs of the wife and children; 4) the necessary living expenses of the husband; 5) the fact that the wife has free use of the home and furnishings; and 6) other such facts and circumstances. Honts, 690 So.2d at 1153. While the amount of separate maintenance should provide for the wife as if the couple were still cohabiting, the allowance should not unduly deplete the husband's estate. Kennedy v. Kennedy,662 So.2d 179, 181 (Miss. 1995).
¶ 22. In setting the amount of separate maintenance, the chancellor noted that both parties are in good health. Mrs. Shorter's net monthly income from her teaching position was $1,900, while Mr. Shorter had resigned from a position with Trustmark National Bank at which he earned approximately $45,000 per year. Since then, he has had only one position, with the Boys and Girls Club of Metro Jackson, at which he earned $5 per hour, or approximately $860 per month. He quit that job after one week, prompting the chancellor to remark that "considering the fact that all of his other expenses, food, lodging and truck payments were being made by his paramour, if he had continued that job, he would have been able to meet over eight-tenths of his obligation [of $1,000 per month] under the temporary order." The chancellor further relied upon the fact that Mr. Shorter owns 22.5 acres of land in Simpson County, "in which he plowed $30,000 of marital assets for improvements on that property." Requiring Mr. Shorter to pay $500 per month in separate maintenance does not unduly deplete his estate.
 III. Denial of a divorce
¶ 23. Finally, Mr. Shorter argues that the chancellor erred in denying him a divorce from Mrs. Shorter on the grounds of either habitual cruel and inhuman treatment or constructive desertion. In support of these claims, he reiterates his complaints regarding the parties' lack of a sexual relationship for one and one-half years prior to their separation.
 A. Habitual cruel and inhuman treatment
¶ 24. "Cruel and inhuman treatment, unaccompanied by personal violence is such conduct only as endangers life, limb, or health, or creates reasonable apprehension of danger thereto, thereby rendering the continuance of the marital relation unsafe for the unoffending spouse or such unnatural or infamous conduct as would make the marital relation revolting to the unoffending spouse and render it impossible to discharge duties thereof." Potts v. Potts,700 So.2d 321, 323 (Miss. 1997). More than mere unkindness or rudeness, or incompatibility or want of affection is required to support a finding of cruel and inhuman treatment. Richard v.Richard, 711 So.2d 884, 888 (Miss. 1998).
¶ 25. The supreme court has held that "inexcusable long-continued refusal of sexual relations warrants divorce, either on the ground of constructive desertion for the statutory period, Graves v.Graves, 88 Miss. 677, 41 So. 384 (1906), or on the ground of habitual cruel and inhuman treatment, Sarphie v. Sarphie,180 Miss. 313, 177 So. 358 (1937)." Culver v. Culver, 383 So.2d 817
(Miss. 1980). In order to warrant the granting of a divorce on the ground of habitual cruel and inhuman treatment, "the case should be, at all events, a clearly extreme one." Sarphie, 180 Miss. at 319, 177 So. at 359. In Culver, the court reversed a chancellor's denial of a divorce on the ground of habitual cruel and inhuman treatment where the *Page 358 
wife refused to engage in sexual relations with her husband for a period of eight years. Culver, 383 So.2d at 817. Such is not the case here.
¶ 26. Mr. Shorter's testimony regarding the parties' lack of a sexual relationship was directly refuted by Mrs. Shorter. The chancellor is the judge of "the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." McKee v. Flynt, 630 So.2d 44, 48 (Miss. 1993). His findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied. Id.
¶ 27. Mr. Shorter points to evidence in support of his claim which he contends that the chancellor improperly excluded. He first attempted to testify that when he and Mrs. Shorter were attempting to conceive their youngest child, Owen, they were on a schedule and would only have sex in order to conceive. The chancellor correctly found such testimony to be irrelevant, as such conduct occurred over eleven years ago. Mr. Shorter also attempted to introduce the testimony of his friend, Ellis Stuart, that Mr. Shorter had complained to him in the past about a total lack of intimacy and sexual relations in his marriage. The chancellor excluded the testimony, finding it to be hearsay. We agree. Mr. Shorter testified as to what he told Mr. Stuart. Having Mr. Stuart repeat this testimony does not corroborate Mr. Shorter's claims. Corroboration comes from an independent source with personal knowledge. In this instance, Mr. Shorter would be corroborating his own testimony.
 B. Constructive desertion
¶ 28. "If either party, by reason of such conduct on the part of the other as would reasonably render the continuance of the marital relationship unendurable, or dangerous to life, health or safety, is compelled to leave the home and seek safety, peace and protection elsewhere, then the innocent one will ordinarily be justified in severing the marital relation and leaving the domicile of the other, so long as such conditions shall continue, and in such case the one so leaving will not be guilty of desertion. The one whose conduct caused the separation will be guilty of constructive desertion and if the condition is persisted in for a period of one year, the other party will be entitled to a divorce." Benson v. Benson, 608 So.2d 709, 711 (Miss. 1992).
¶ 29. Mr. Shorter again relies on the alleged lack of a sexual relationship with his wife as conduct entitling him to a divorce, this time on the ground of constructive desertion. As noted by one commentator, "the line between the heretofore seldom used ground of constructive desertion and the ground of habitual cruel and inhuman treatment [is] blurred" with the only distinction being that in the former, the non-complaining party is compelled to leave and the objectionable conduct continues for one year. N. Shelton Hand, Jr., Mississippi Divorce, Alimony and Child Custody, § 4, n. 71 (4th ed. 1996). Mr. Shorter failed to establish conduct which renders the continuance of the marriage unendurable or dangerous to life, health or safety. The chancellor did not err in denying Mr. Shorter a divorce on this ground.
 IV. Attorney's fees
¶ 30. Mrs. Shorter seeks an award of attorney's fees incident to this appeal. Mr. Shorter has not contested this award. The established practice is to award one-half the attorney's fees award made in the trial court. Clements v. Young, 481 So.2d 263, 271 (Miss. 1985). The chancellor awarded Mrs. Shorter $4,000 in attorney's fees. Consequently, she is entitled to one-half of that amount, or $2,000.
¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY ISAFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OFTHIS APPEAL ARE TAXED TO THE APPELLANT AND ATTORNEY'S FEES IN *Page 359 THE AMOUNT OF $2,000 ARE AWARDED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE,AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.
[1] Mr. Shorter filed a formal complaint against Arnold Dyre with the Mississippi Bar Association. It was subsequently dismissed by the Committee on Professional Responsibility.