CHANDLER, J.,
for the court.
¶ 1. This is a divorce action brought by Janie Tedford against Bobby Tedford on the grounds of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. The chancellor granted Janie a divorce on the ground of habitual cruel and inhuman treatment. Feeling aggrieved, Bobby appeals. Finding merit in Bobby’s claim that the evidence does not substantially support a divorce on the grounds of habitual cruel and inhuman treatment, we reverse.
FACTS
¶ 2. Janie and Bobby were married in Panola County, Mississippi, on September 16, 1966, and separated in December of 2001. They have two adult daughters, Jennifer and Tawana. On February 6, 2002, Janie filed for divorce upon the statutory ground of habitual cruel and inhuman treatment, or in the alternative, for irreconcilable differences.
¶ 3. Janie claimed that the last four years of her thirty-six year marriage to Bobby were emotionally unbearable. She acknowledged that prior to those last few years they had a happy marriage. Janie stated that the relationship changed when the family purchased a home computer. She testified that Bobby spent all of his time on the computer. Janie could not confirm what Bobby was viewing on the computer because he would immediately change the screen when she entered the room, but she speculated that Bobby was looking at pornography because of his secretive nature concerning the use of the computer. Bobby asserted that the computer was used for viewing cars on eBay, not for looking at pornography. Bobby owns a used auto parts business and he claimed that the computer was used to search eBay for used parts and antique items relating to his business.
¶ 4. Janie said the purchase of the computer had changed Bobby causing him to *755 no longer want to sleep in the marital bedroom. Bobby stated that his prolonged absence from the martial bed was not motivated by the use of the computer. He claimed that he stopped sleeping in the marital bedroom for other reasons. Bobby said their adult daughter, Tawana, had slept in the bed with the couple since she was a child. Bobby thought it was inappropriate for him to continue sleeping in the same bed as his daughter who was now an adult. Neither, was it a feasible arrangement for three adults to sleep in one bed, according to Bobby. However, Bobby admitted that Tawana had been away at college for two years at the time of trial.
¶ 5. Janie claimed that Bobby refused to have a sexual relationship and ignored her affections. Janie testified that in the past three years she had only engaged in sexual intercourse twice with Bobby. The last sexual encounter between the couple occurred approximately three months prior to the separation. Bobby responded to Janie’s allegations by claiming she was the reason the couple did not have sex. Janie admitted that Bobby did want to have sexual relations with her but only early in the morning when she was too tired.
¶ 6. Janie claimed that Bobby emotionally abused her by repeatedly claiming she was crazy and overweight. Bobby admitted that he told Janie to exercise more control over her weight. Bobby also admitted that he told Janie to get psychological help after she accused him of putting cameras in the walls to spy on her. Janie admitted that she had accused Bobby of putting cameras in the wall. Janie believed Bobby had cameras in the wall because he always knew her every move.
¶ 7. Janie claimed that Bobby controlled the family finances and would not allow her to have her own money. However, Janie admitted that Bobby always provided for her and the children. She stated that every weekend the two traveled to the casinos and went out together. Janie admitted that Bobby never physically abused her and that she was never in any reasonable apprehension of danger.
¶ 8. Janie testified that the stress of her deteriorating marriage aggravated a preexisting seizure condition to the point where she was having more seizures than normal. Janie informed her physician, Dr. David A. Ball, of the medical problems she was having and Bobby’s obsession with the computer. Janie stated that the stress and depression reached such severity Dr. Ball prescribed Zoloft, an anti-depressant, to treat the illness. Dr. Ball testified that he believed Bobby was viewing pornography based upon the information supplied to him by Janie. Dr. Ball opined that Janie was depressed but he did not believe Janie was psychologically unfit.
¶ 9. On September 30, 2002, the chancellor granted Janie a divorce on the ground of habitual cruel and inhuman treatment. The chancellor stated that the “infatuation and addiction toward a modem which the end result is a total avoidance of his marital relationship gives the plaintiff grounds for a divorce.”
LAW AND ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN AWARDING JANIE A DIVORCE ON THE GROUND OF HABITUAL, CRUEL AND INHUMAN TREATMENT.
¶ 10. This Court is to reverse a chancellor’s ruling only when the findings are manifestly wrong and there is no substantial supporting evidence. “An appellate court will view the facts of a divorce decree in a light most favorable to the appellee.” Bodne v. King, 835 So.2d 52, 57(¶ 15) (Miss.2003). This Court will reverse a chancellor’s decree of divorce if it *756 is manifestly wrong as to law or fact. Fisher v. Fisher, 771 So.2d 364, 367(¶ 8) (Miss.2000).
¶ 11. Habitual cruel and inhuman treatment may be established by a showing of conduct that either (1) endangers life, limb or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance. Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993); Gardner v. Gardner, 618 So.2d 108, 113-14 (Miss.1993). A preponderance of the evidence, rather than clear and convincing evidence may be used to grant a divorce on the ground of habitual cruel and inhuman treatment. Smith v. Smith, 614 So.2d 394, 396 (Miss.1993). A subjective standard is used to determine the effect of the conduct on the offended spouse as, opposed to a normative standard. Morris v. Morris, 783 So.2d 681, 688 (¶ 22) (Miss.2001).
¶ 12. The case presented before this Court does not require an analysis of the “danger” portion for habitual cruel and inhuman treatment. Janie testified that Bobby never physically abused her nor was she in reasonable apprehension of physical harm. Therefore, the Court must determine whether the evidence supports the granting of a divorce under the “unnatural and infamous” prong of the test.
¶ 13. Janie argues that Bobby’s withdrawal of intimacy, verbal abuse, criticism, and control of family finances over a period of time was enough to establish habitual cruel and inhuman treatment. However it is well settled that “more than mere unkindness or rudeness, or incompatibility or want of affection is required to support a finding of cruel and inhuman treatment.” Shorter v. Shorter, 740 So.2d 352, 357 (¶ 24) (Miss.Ct.App.1999). Janie’s relies on Savell v. Savell, 240 So.2d 628, 629 (Miss.1970), and argues the compilation of Bobby’s acts constitute cruelty, but Saveli is inapposite to the facts of this case. In Saveli, there was a pattern of physical abuse, financial neglect, threatening language and intoxication by the husband. Id. The court granted a divorce for habitual cruel and inhuman treatment because of the emotional stress resulting from the defendant’s behavior. Id. Bobby’s conduct does not rise to the level of the abuse that was apparent in Saveli. Janie acknowledges that there was no physical abuse, threatening language nor financial neglect.
¶ 14. Janie’s witnesses at the divorce hearing were Linda Joiner and Dr. David Ball. Linda Joiner testified that Janie had been depressed continuously since moving in with her during the parties’ separation but offered no evidence to show Bobby caused Janie’s depression. Linda admitted that she had no personal knowledge that Bobby had physically hurt Janie. But she did notice that Janie was afraid of Bobby the day that Janie and Linda went to the Tedford house to retrieve Janie’s belongings. Linda testified that Bobby was not threatening or violent toward Janie while they were gathering Janie’s belongings. Linda provided no specific instances of verbal abuse by Bobby.
¶ 15. Dr. Ball testified that Janie was depressed as a result of the marital bedroom situation and Bobby’s excessive use of the computer. But Dr. Ball’s diagnosis was derived exclusively from the information provided to him by Janie who failed to fully inform the doctor of the parties’ unconventional sleeping arrangement, visits to the casino and her suspi *757 cions of cameras in the walls. This evidence fails to meet the standard required when granting a divorce on the grounds of habitual cruel and inhuman treatment. Hodge v. Hodge, 837 So.2d 786, 788 (¶ 8) (Miss.Ct.App.2003); Hassett v. Hassett, 690 So.2d 1140, 1146 (Miss.1997); Potts v. Potts, 700 So.2d 321, 323 (¶ 13) (Miss.1997); Ayers v. Ayers, 734 So.2d 213, 215-16 (¶ 11) (Miss.Ct.App.1999).
¶ 16. Bobby’s and Janie’s daughters testified at the divorce hearing. Neither daughter stated that Bobby was verbally abusive or cruel to Janie. The youngest daughter, Tawana, testified that the couple never physically fought with each other but did engage in minor quarrels.
¶ 17. Inexcusable long-continued refusal of sexual relations warrants divorce, either on the ground of constructive desertion or habitual cruel and inhuman treatment. Sarphie v. Sarphie, 180 Miss. 313, 319, 177 So. 358, 359 (1937). To grant a divorce on grounds of habitual cruel and inhuman treatment for refusal of sexual relations must be “extreme.” Id. Four months without sexual relations was not considered extreme enough to warrant a divorce based on habitual cruel and inhuman treatment divorce. Id. This Court has held that a year and a half without sex was not extreme enough to meet the test for habitual cruel and inhuman treatment. Shorter v. Shorter, 740 So.2d 352, 357 (¶ 29) (Miss.Ct.App.1999).
¶ 18. Janie admitted that a few months prior to the separation, she and Bobby had engaged in sexual intercourse. Janie also testified that Bobby did initiate on various occasions sex early in the morning but that she was not in the mood. There was testimony by Janie and Bobby that their adult daughter had continued to sleep in the same bed with the couple until she left home to attend Mississippi State University. Janie asserted that Bobby’s use of the family computer was the reason the marital relationship had deteriorated. She accused Bobby of viewing pornography on the computer and claimed this was the reason Bobby’s affection for her subsided in recent years. Bobby contends that he tried to re-enter the marital bedroom after Tawana left home but Janie refused to allow it. Janie denied that Bobby attempted to return to the bedroom after their daughter left home. There is conflicting testimony regarding the decline in the couple’s intimate relationship. Due to the unconventional sleeping arrangement, conflicting testimony concerning each parties’ sexual desire for the other and the undisputed fact the couple consummated sex three months prior to separation, this Court finds insufficient evidence to support the granting of divorce due to habitual cruel and inhuman treatment.
¶ 19. The Court holds that the chancellor was in error by granting Janie a divorce on the ground of habitual cruel and inhuman treatment. Although there appears to be unhappiness on the part of Janie in continuing with this marriage, there is not sufficient proof to grant a divorce on this ground. Bobby’s conduct does not rise to the level of “infamous and unnatural” behavior which supports a granting of divorce. Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993); Gardner v. Gardner, 618 So.2d 108, 113-14 (Miss.1993).
¶ 20. The Court declines to address the other issues in this case because resolution of the first issue is dispositive of the case.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
*758 McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ„ CONCUR. KING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.