616 So.2d 294 (1993)
Betty Ann Michaels LYNCH
v.
David Driskell LYNCH.
No. 90-CA-1228.
Supreme Court of Mississippi.
March 25, 1993.
*295 Marc E. Brand, Brand & Abbott, Jackson, for appellant.
Roy D. Powell, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from a judgment of the Chancery Court for the First Judicial District of Hinds County granting appellant Betty Michaels Lynch separate maintenance and attorneys' fees. In so ruling, the Chancellor denied the petition of David Driskell Lynch, appellee and cross-appellant, for a divorce on the grounds of cruel and inhuman treatment and/or constructive desertion. Finding that an award of separate maintenance is inappropriate when the wife's conduct is largely to blame for the demise of the marital relationship, and that the chancellor erred in failing to grant a divorce to the appellant, we reverse and remand for further proceedings consistent with this opinion.

I.
Betty Ann Michaels Lynch and David Driskell Lynch were married on June 9, 1954. Four children, all emancipated adults, were born of the marriage. They separated in December, 1987, when David could no longer tolerate Betty's persistent nagging about the two or three beers he enjoyed each evening after work; her accusations that he was an alcoholic and engaged in affairs with other women; and her insistence against his will that he read religious books and watch the Christian television channel. He asserted that about once or twice a week she accused him of having affairs, specifically with a woman from church and a woman at Kroger's. He further testified with regard to Betty's nagging and accusations in general, that:
They were usually in the afternoon, of course, when I would come in from work, and she would accuse me of one of these things I've described. It might last 20 minutes, 15 to 30 minutes. It would start out with her tongue being sort of stern toward me, and if I objected and said that wasn't true, then it became louder and her tone became angry. That happened several times a week.
The record indicates that the couple enjoyed a relatively happy marriage until the early 1980's. Gradually, the fabric of both the marital and family relationships began to erode, largely, as members of the family testified, because of Betty's behavior toward her husband and children. The record indicates that at that time, she began to have problems coping, stating that she had "a lot of difficulty after that hysterectomy" and that she thought that her children, all teenagers, were "ganging up" on her. It was during this period that Betty started nagging, alienating even her children. Throughout the years, she sought guidance and counseling for the family's growing problems. Because she thought her children lied to her, she sought family counseling with an adolescent psychologist in 1982. She admitted herself to Riverside/Charter Hospital sometime in 1983 or 1984 after suffering bouts of depression. Later, in 1984, when David was transferred from Oxford to Jackson, she threatened to commit suicide, believing that David did not want her to move with him. During this period, the entire family went through counseling together. In 1985, she began to attend Al-Anon, a support group for families of alcoholics.
Aside from Betty's accusations, there is no evidence that David indulged in alcohol *296 beyond his afternoon beers. He had undergone liver enzyme tests and had abstained from drinking over a three to four-week period in an effort to show her that he was not an alcoholic. The record indicates that David was in good health, taking medication only for high blood pressure, an inherited condition. Moreover, there is no evidence that David was involved with other women.
On August 31, 1989, David filed a complaint for divorce on the grounds of irreconcilable differences and further, on grounds of cruel and inhuman treatment and/or constructive desertion. Betty, a devout Catholic, opposed the divorce, and filed a counterclaim for separate maintenance on March 23, 1990.
During the course of a three-day hearing, the Chancellor heard testimony from both parties, as well as from family members, colleagues and accountants. Based on the evidence put before her, the Chancellor found that the facts did not warrant the granting of a divorce on the grounds of cruel and inhuman treatment and/or constructive desertion. Although she found that Betty was not without fault in the separation, she opined that equity and the circumstances of the case required relief in the form of separate maintenance. In her July 24, 1990, judgment, the Chancellor clarified the award of separate maintenance and further awarded Betty attorneys' fees in the amount of $2,729.25.
Betty then filed a motion for a new trial, reconsideration, and to amend the judgment, asserting that the award made by the Chancellor was insufficient to cover her living expenses. The Chancellor entered an amended judgment on October 26, 1990.

II.
On appeal, Betty contends that the Chancellor's award of separate maintenance is insufficient because it does not allow her to maintain the lifestyle to which she had been accustomed and is in derogation of this Court's guidelines for the award of separate maintenance. David, in his cross-appeal, asserts that because Betty's behavior toward him was the cause of the separation, the Chancellor erred in awarding her separate maintenance.
Separate maintenance is "a court-created equitable relief" based upon the marriage relationship. Robinson v. Robinson, 554 So.2d 300, 303 (Miss. 1989); Thompson v. Thompson, 527 So.2d 617, 621 (Miss. 1988). Recalling the nature and function of separate maintenance, we have noted that:
[i]n former times, when divorce was socially less acceptable, it was used with more frequency to preserve the marriage relationship and enforce the husband's legal duties to support his wife. However, under today's mores, the divorce is more commonly sought when the marriage has deteriorated. Nevertheless, the purpose of separate maintenance when it is sought has not changed.
Thompson, 527 So.2d at 621.
It is well-established that "[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other." Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 7.00 (2d ed. 1957). The power of the chancellor to grant a wife's request for separate maintenance is based on: (a) separation without fault on the part of the wife and (b) willful abandonment of the wife by the husband accompanied by a refusal to support her. Robinson, 554 So.2d at 303; Thompson, 527 So.2d at 621; Bridges v. Bridges, 330 So.2d 260, 262 (Miss. 1976); Etheridge v. Webb, 210 Miss. 729, 50 So.2d 603, 607 (1951). In Robinson, we held that the wife need not be totally blameless to allow an award of separate maintenance, but that her (mis)conduct must not have materially contributed to the separation. Id. at 304, citing King v. King, 246 Miss. 798, 152 So.2d 889, 891 (1963). See also Marble v. Marble, 457 So.2d 1342, 1343 (Miss. 1984).
We find no evidence that David refused to provide for Betty when he moved out of the marital domicile. Moreover, the testimony of family members, friends and *297 colleagues supports David's contention that Betty's persistent nagging and accusations materially contributed to the separation. The Chancellor, too, found that Betty was "not without fault in the separation." Accordingly, we find that the Chancellor was manifestly in error by awarding Betty separate maintenance, and, therefore, that judgment should be vacated. However, we do not reach the question of the adequacy of the award.

III.
In his cross-appeal, David further contends that the Chancellor erred in failing to grant his petition for divorce on the grounds of constructive desertion or in the alternative, cruel and inhuman treatment. We are of the opinion that the evidence shows that David is entitled to a divorce on the grounds of constructive desertion. As we explained in Day v. Day, 501 So.2d 353 (Miss. 1987):
If either party, by reason of such conduct on the part of the other as would reasonably render the continuance of the marital relationship unendurable, or dangerous to life, health or safety, is compelled to leave the home and seek safety, peace and protection elsewhere, then the innocent one will ordinarily be justified in severing the marital relation and leaving the domicile of the other, as long as the conditions shall continue, and in such case as the one so leaving will not be guilty of desertion. The one whose conduct caused the separation will be guilty of constructive desertion and if the condition is persisted in for a period of more than one year, the other party will be entitled to a divorce.

Day, 501 So.2d at 356 (quoting Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 3.11(12)). Based on David's testimony, as well as that of other family members, we are persuaded that Betty's behavior had made the marital relationship intolerable and unendurable. Her persistent nagging and accusations of adultery had lasted more than one year; in fact, nearly a decade. Indeed, such conduct may warrant the grant of a divorce on grounds of constructive desertion or even cruel and inhuman treatment.
Where one spouse makes false and unfounded charges that the other is guilty of adultery, and thus causes the latter to leave the home, the latter is not guilty of desertion, and it is often held that the former is guilty of constructive desertion.
24 Am.Jur.2d, Divorce and Separation, § 124 (1966).
Cruelty or indignities may consist of frequent nagging or the use of insulting and humiliating language. False accusations of adultery or other crimes may constitute cruelty.
24 Am.Jur.2d, Divorce and Separation, § 55 (1966).

IV.
Holding as we have that the Chancellor erred in failing to grant David the divorce he sought, we are of the opinion that the award of attorneys' fees is based on the erroneous finding that Betty was entitled to separate maintenance. Further, our decision today precludes us from reaching issues regarding the partition of the marital dwelling as well as the Oxford property.
Having reversed and vacated the Chancellor's award of separate maintenance to Betty and the failure to grant a divorce on the grounds of construction desertion, we remand the case for further consideration consistent with this opinion.
REVERSED AS TO AWARD OF SEPARATE MAINTENANCE AND ATTORNEYS' FEES AND REMANDED FOR RECONSIDERATION CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.