767 So.2d 272 (2000)
Thomas Glen CRENSHAW, Appellant,
v.
Cynthia Sanders Stanford Goss CRENSHAW, Appellee.
No. 1999-CA-01388-COA.
Court of Appeals of Mississippi.
August 15, 2000.
Rehearing Denied September 26, 2000.
*274 David L. Walker, Batesville, Attorney for Appellant.
John Thomas Lamar, Jr., Senatobia, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Thomas Glen Crenshaw was denied a divorce by the Chancery Court of Tate County. He was ordered to provide his wife, Cynthia Crenshaw, separate maintenance and also to pay some of her legal fees. On appeal he argues that he provided sufficient proof to support a divorce based on cruel and inhuman treatment, and that separate maintenance was not justified because his wife was not free of fault. We find no error and affirm.

FACTS
¶ 2. Thomas and Cynthia Crenshaw were married on February 27, 1988. They began their marriage with few material assets. During the course of the marriage, Mr. Crenshaw worked at a number of jobs, including positions with finance companies and grocery stores. He also served for a time on active duty in the U.S. Army. When he filed for divorce, he was working part-time as a pizza delivery person/manager trainee while attending the University of Mississippi in pursuit of an accounting degree.
¶ 3. The couple had one child together, Lillian Rachel Crenshaw, born November 3, 1991. Mrs. Crenshaw has two children from previous marriages, Jessica Stanford and Ryan Goss, who also live in the marital home. At the time this case was brought, Mrs. Crenshaw worked part-time in her own house cleaning business and home schooled her children.
¶ 4. The Crenshaws began to have problems in their marriage in the fall of 1998. Mr. Crenshaw testified that when he was commuting to a job in Memphis and going to school, he would sometimes come home to find no food prepared and his clothes not laundered and ironed for the following day. Mrs. Crenshaw said that her husband came home after she and the children were already asleep, and that food was always in the refrigerator and his clothes usually were ready for the next day.
¶ 5. Mr. Crenshaw said that his wife sometimes would be unavailable for marital relations for as much as a month at a time, while she testified that normally no more than two weeks passed without the couple engaging in sex. Mrs. Crenshaw said that her husband was often sullen or argumentative with her and the children and that he suffered from episodes of depression. He claimed that the depression and trouble sleeping resulted from the couple's marital difficulties.
¶ 6. In the late fall of 1998, Mr. Crenshaw began some sort of relationship with an unmarried woman named Tina Hentz. On December 20, 1998, he left the marital home and refused to return. He filed for divorce on the grounds of habitual cruel and inhuman treatment on February 23, 1999. At trial in July 1999, when asked whether the nature of their relationship was sexual, both Mr. Crenshaw and Tina Hentz invoked the Fifth Amendment and refused to answer.
¶ 7. At trial Mrs. Crenshaw testified that she did not want a divorce and that she wanted her husband to come home and resume their marital relationship.
¶ 8. After a half-day trial, the chancellor refused to grant a divorce. On August 9, 1999, he entered a decree ordering Mr. Crenshaw to pay separate maintenance of $1,086 per month until such time as he *275 returned home. The decree also awarded temporary custody of their child Rachel to her mother, along with partial attorney's fees of $1,200, to be paid within six months of the decree. The father was allowed reasonable visitation.

DISCUSSION

I. Habitual Cruel and Inhuman Treatment
¶ 9. Mr. Crenshaw asserts that he proved his wife's habitual cruel and inhuman treatment of him. The chancellor found that the evidence did not support the claim. Findings of the chancery court on contested facts require that decisions be made regarding credibility and weight of evidence. We will uphold the findings if substantial evidence supports them and there is no manifest error. Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995).
¶ 10. Habitual cruel and inhuman treatment may be established in the following manner:
only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said a permanent condition.
Wilson v. Wilson, 547 So.2d 803, 805 (Miss.1989).
¶ 11. The conduct must either (1) endanger life, limb, or health, or create a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) be so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying any basis for its continuance. Daigle v. Daigle, 626 So.2d 140, 144 (Miss. 1993). This behavior may be established by a preponderance of the evidence, and it must consist of "something more than unkindness or rudeness or mere incompatibility or want of affection." Daigle, 626 So.2d at 144 (quoting Smith v. Smith, 614 So.2d 394, 396 (Miss.1993)).
¶ 12. The court in one precedent held that the husband was entitled to a divorce on these grounds: when his wife sat in front of the television all day watching the Home Shopping Channel without answering the doorbell; refused to cook, clean or care for the children; spent all her husband's paycheck on items ordered from the Home Shopping Channel so that household bills were neglected; and shouted and cursed continually at the husband, accusing him of adultery and incestuous child molestation in front of the children. Richard v. Richard, 711 So.2d 884, 887-88 (Miss.1998).
¶ 13. From the testimony of the seven witnesses at trial, we can accept that the last few months that the couple lived together were unpleasant. Mrs. Crenshaw testified that she and the children rarely saw her husband, and when they did, he was surly and uncommunicative. We have discussed the evidence already, which reveals friction, unhappiness, and general disagreements regarding meals and clothes. As to the possible refusal of sexual relations, such refusal was for at most a month. The supreme court has found that four months without sexual relations does not constitute cruelty:
[I]n the many cases we have read in connection with the point here involved, we have found no case where so short a time as four months has been held to be sufficient to establish the ground of habitually or extremely cruel treatment. We think on this ground, certainly to make out a case, the facts should present an inexcusable and long-continued refusal to permit coition, and that the case should be, at all events, a clearly extreme one.
Sarphie v. Sarphie, 180 Miss. 313, 177 So. 358, 359 (1937).
*276 ¶ 14. The chancellor correctly found that grounds for divorce based on habitual cruel and inhuman treatment were not proven. Habitual cruel and inhuman treatment is not the catch-all category to permit a divorce when a marriage is suffering difficulties. Absent an agreement by the spouses that would permit an irreconcilable differences divorce, neither party is entitled to be granted a divorce without providing the proof necessary to support the grounds that are alleged. See Potts v. Potts, 700 So.2d 321, 323 (Miss.1997). Therefore, the chancellor's denial of a divorce on grounds of habitual cruel and inhuman treatment was manifestly not in error.

II. Award of Separate Maintenance
¶ 15. The chancellor awarded Mrs. Crenshaw separate maintenance. Such a decree has been described as "a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other." Kennedy v. Kennedy, 650 So.2d 1362, 1367 (Miss.1995). For the court to award separate maintenance, it must find "a separation without fault on the wife's part, and willful abandonment of her by the husband with refusal to support her." Lynch v. Lynch, 616 So.2d 294, 297 (Miss.1993).
¶ 16. Mr. Crenshaw argues that his wife should not receive separate maintenance because she is not without fault in their separation. If this means that she fell short of perfection, that is true of us all. If it means that she was guilty of extreme or cruel behavior toward her husband, we have already agreed with the chancellor that the evidence of that was absent. Mrs. Crenshaw testified that she was willing for her husband to return home, and that she loved him despite his possible affair with another woman. A "wife need not be totally blameless to allow an award of separate maintenance." Lynch v. Lynch, 616 So.2d 294, 296 (Miss. 1993). Still, "her misconduct must not have materially contributed to the separation." Id.
¶ 17. We find no evidence in the record that Cynthia Crenshaw's conduct materially contributed to the separation and affirm the chancellor's award of separate maintenance.

III. The Amount of the Separate Maintenance
¶ 18. Even if separate maintenance was proper, Mr. Crenshaw alleges that the amount was excessive. Citing "equitable principles," he argues that the court must consider his right to lead as normal a life as possible with a decent standard of living. See Williams v. Williams, 528 So.2d 296, 297 (Miss.1988). Those and other considerations were established in a 1955 precedent and have been repeated in many supreme court opinions:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire source of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings, and automobile, and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955): see Brendel v. Brendel, 566 So.2d 1269, 1272 (Miss.1990).
¶ 19. The chancellor stated that he evaluated these factors in light of the parties' financial statements in making his decision. The chancellor determined that Mrs. Crenshaw earned about $1,000 per month *277 and had expenses of $2,300. Mr. Crenshaw was earning about $2,360 per month and had expenses of $1,466. However, the chancellor found that Mr. Crenshaw had the capability of making 40% more per month than he was presently earning. He had been earning $9.00 per hour working for Conway Southern Express, but testified that he voluntarily left that job to work at $5.50 per hour delivering pizzas for Dominoes. The chancellor looked at earning ability and not just at Mr. Crenshaw's current earnings.
¶ 20. The chancellor found that Mrs. Crenshaw needed $1,278 more per month to cover expenses, while Mr. Crenshaw even at his lower-paying job earned $894 more per month than his expenses. The chancellor "split the difference" between those two amounts and ordered separate maintenance of $1,086 per month to be paid Mrs. Crenshaw. The effect was to require Mr. Crenshaw to get a better-paying job closer to what he had been making before, while Mrs. Crenshaw was going to have to engage in some economies. We do not endorse the chancellor's formula for calculating separate maintenance as a general proposition, but it appears equitable in this specific situation.
¶ 21. The chancellor also required Mr. Crenshaw to pay half of his wife's $2,400 attorneys' fee. He found that she had no ability to pay the attorney except through the separate maintenance that she would be receiving. We find no abuse of the chancellor's discretion.
¶ 22. THE JUDGMENT OF THE TATE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
MYERS, J., NOT PARTICIPATING.