GRIFFIS, P. J.,
for the Court:
¶ 1. Arthur Collins appeals the modification of his separate-maintenance payments. Arthur argues that the chancellor erred when he increased his monthly payments and awarded attorney’s fees. We find no error and affirm.
FACTS
¶ 2. Arthur and Myra Helen Collins were married on August 12, 1967. One son was born during their marriage; he is now an adult. Myra is twelve years older than Arthur.
¶ 3. Arthur and Myra separated in March 1998, while living in Rankin County, Mississippi. Arthur began living with another woman.
¶ 4. In 1998, Myra filed a complaint for separate maintenance. Arthur filed a counterclaim for divorce on the ground of habitual cruel and inhuman treatment. In 2001, the chancellor entered an order granting Myra separate maintenance and denying Arthur’s counterclaim for divorce. Myra was awarded monthly separate maintenance in the amount of $1,250. Arthur was ordered to pay the $420 monthly mortgage payment on the house, pay Myra’s monthly health-insurance premium, and maintain a $25,000 life-insurance policy for her benefit. Myra was also awarded the use and possession of the home and automobile, and the furniture, appliances, and other items of personal property located at the home. When the order was entered, Myra received a monthly Social Security benefit of $142.
¶ 5. On December 29, 2010, Myra filed a petition for modification of the separate-maintenance order. Myra asked the court to increase the monthly separate-maintenance payment, award attorney’s fees, and make other modifications.
¶'6. By order entered on May 8, 2012, the chancellor modified the separate-maintenance order and granted the following relief: the monthly separate-maintenance award to Myra from Arthur was increased to $2,250 per month (beginning April 1, 2012); Arthur was ordered to pay Myra’s Medicare supplemental health-insurance premium of $182 per month; Myra was awarded a judgment against Arthur in the sum of $1,546 for arrearage for the insurance premiums; and Myra was awarded attorney’s fees in the sum of $4,234.74. Arthur now appeals this order.
STANDARD OF REVIEW
¶ 7. We review domestic-relations matters under the limited substantial-evidence or manifest-error rule. Evans v. Evans, 994 So.2d 765, 768 (¶ 9) (Miss.2008) (citing Giannaris v. Giannaris, 960 So.2d 462, 467 (¶ 8) (Miss.2007)). A chancellor’s findings of fact will not be disturbed on appeal when “supported by credible evidence and not manifestly •wrong.” Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990).
ANALYSIS

I. The chancellor did not err in granting Myra’s request for an wpward modification of the amount of separate maintenance.

¶ 8. Arthur argues that it was error for the chancellor to grant an upward modification of separate maintenance to Myra. He claims that the chancellor failed *1068 to consider the factors addressed in Crenshaw v. Crenshaw, 767 So.2d 272, 276 (¶ 18) (Miss.Ct.App.2000).[1] Arthur asserts that the upward modification of the award is depleting his estate and has made it almost impossible for him to save money to buy a personal vehicle for himself when he retires. Arthur also claims that the upward modification of the award has created a “windfall” for Myra, because she now has significantly more income and assets and less expenses than she had at the time of the separate-maintenance order in 2001.
¶ 9. Myra responds that the chancellor did not err in increasing the separate-maintenance payments, because Arthur is able to pay the increase and maintain a reasonable standard of living.
¶ 10. In Kennedy v. Kennedy, 650 So.2d 1362, 1368 (Miss.1995), the supreme court compared the modification of separate-maintenance awards to the modification of child-support payments. The party that seeks to modify the chancellor’s order “must demonstrate a ‘substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified.’ ” Id. (quoting McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994)).
¶ 11. Here, based on the evidence presented, the chancellor determined that a modification was necessary. The chancellor concluded that Myra’s expenses had greatly increased since 2001. The chancellor considered the health, earning capacity, entire source of income, and taxes of both parties. The chancellor carefully examined Myra’s reasonable needs and available resources (such as the use of the home, automobile, and furnishings), Arthur’s necessary living expenses, his assets, and other relevant factors. As a result, the chancellor determined that there had been a material change of circumstances that required an upward modification of the separate-maintenance order. The chancellor granted the relief discussed above.
¶ 12. The chancellor’s findings also noted that the goal of separate maintenance is to provide the normal support a spouse would have received in the intact marriage without unduly depleting the other’s estate. See Thompson v. Thompson, 527 So.2d 617, 622 (Miss.1988). Also, in King v. King, 246 Miss. 798, 802, 152 So.2d 889, 890-91 (1963), the supreme court held that “[a] decree for separate maintenance does not end the marriage. It in effect commands the husband to resume cohabitation with his wife, or in default thereof, to provide for her suitable maintenance until there may be a reconciliation.” See also Kennedy, 650 So.2d at 1367.
¶ 13. When the 2001 order was entered, Myra received Social Security benefits of *1069 $142. On October 1, 2011, Arthur began to receive Social Security benefits in the amount of $2,360; and Myra’s monthly benefit had increased to $1,095. Arthur argues that Myra’s current Social Security benefit of $1,095 and the revised separate-maintenance award of $2,250 allows her an “astounding” monthly income of $3,345, with monthly living expenses of $2,549.10. Myra is left with $795.90 in disposable income. Arthur’s income was $6,938.00, with living expenses of $1,845, leaving $5,093 in disposable income. Thus, his payments to Myra take 44% of his disposable income.
¶ 14. The chancellor applied the factors from Crenshaw to determine whether an increase in payment was necessary. The chancellor found that Arthur’s estate was not depleted, and it is not near depletion. We find that the chancellor’s judgment was supported by credible evidence and was not manifestly wrong. Therefore, we affirm the chancellor’s findings on this issue.

II. The chancellor did not err in awarding attorney’s fees to Myra.

¶ 15. Arthur next argues that it was error to award Myra attorney’s fees in the amount of $4,234.74. Arthur claims that because this is not a contempt action and there was no finding of Myra’s inability to pay, the chancellor may not award the entire amount of attorney’s fees sought.
¶ 16. In Labella v. Labella, 122 So.2d 472, 475 (¶ 12) (Miss.1998), the supreme court found that one of the parties “clearly established an inability to pay because she was unemployed at the time of trial and her only income was in the form of unemployment benefits.” The court noted that “[t]he general rule is that if a party is financially able to pay his attorney's] fees[,] he should do so, though this is a matter which is entrusted to chancellor’s sound discretion.” Id. at (¶ 13) (quoting Anderson v. Anderson, 692 So.2d 65, 74 (Miss.1997)). Also, in Hammett v. Woods, 602 So.2d 825, 830 (Miss.1992), the supreme court ruled that “[w]here the record shows an inability to pay and a disparity in the relative financial positions of the parties, we find no error” in awarding attorney fees. Here, the lower court found that “[Myra] has proven that she has an inability to pay and that [Arthur] has the much, much greater ability to pay attorney’s fees, and therefore an award of fees is appropriate in this modification proceeding.”
¶ 17. We find no error in the chancellor’s decision to award Myra attorney’s fees. We therefore affirm the chancellor’s judgment.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J„ CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. "[T]he court must consider [the paying spouse's] right to lead as normal a life as possible with a decent standard of living.” Crenshaw, 767 So.2d at 276 (¶ 18). This Court also noted the other considerations:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire source of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings, and automobile, and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
Id. (quoting Brendel v. Brendel, 566 So.2d 1269, 1272 (Miss.1990); Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955)).